# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YHEIZZI VALLADARES,<br><br>       Plaintiffs,<br><br>    v.<br><br>SPECIALIZED LOAN SERVICING, LLC, et al.,<br><br>       Defendants. | Case No. 1:23-cv-01224-NODJ-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION TO DISMISS BE GRANTED WITH LEAVE TO AMEND ONLY AS TO CERTAIN CAUSES OF ACTION<br><br>(ECF Nos. 5, 6, 7, 8, 10, 11, 13) |

## I.

## INTRODUCTION

Currently before the Court is Defendant Specialized Loan Servicing, LLC's ("SLS") motion to dismiss, filed on September 25, 2023.  (ECF No. 16.)  The Court held oral argument on the motion on November 8, 2023. (ECF No. 14.)  Based on the moving, opposition, and reply papers, the operative complaint, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendant's motion to dismiss with leave to amend as to certain causes of action, and without leave to amend as to others.

## II.

## BACKGROUND

This action was initially filed in the Kings County Superior Court, and removed to the Eastern District of California on August 16, 2023.  Plaintiff filed a first amended complaint on

September 12, 2023, the operative complaint.  (FAC, ECF No. 5.)  Plaintiff names the following

Defendants: (1) Specialized Loan Servicing, LLC; and (2) Affinia Default Services, LLC.[1]

Plaintiff alleges that on or about October 27, 2006, Plaintiff took out a second mortgage

loan against the Property with Countrywide Bank, N.A. ("Countrywide"), the amount of

$42,000.00 (the "Loan")..  (FAC ¶ 12.)  In or around 2009, Plaintiff approached her lender for

the first mortgage, Bank of America, N.A. ("BOA") and requested loss mitigation options, and

BOA provided Plaintiff with a modification agreement, and has been current on the first

mortgage loan since the modification took effect.  (FAC ¶¶ 15-16.)

Around this time, Plaintiff stopped receiving mortgage statements from Countrywide; the

Loan stopped appearing on Plaintiff's credit report; Plaintiff understood this to mean that the first

mortgage and the Loan had been combined under the modification agreement; in or around 2015,

SLS contacted Plaintiff, demanding full payment of the Loan in the amount of $42,000.00 plus

taxes and fees; and it was at this time that Plaintiff learned that (1) SLS was the servicer of the

Loan, and (2) that the Loan was in default.  (FAC ¶¶ 17-21.)  On February 12, 2021, Defendant

Affinia, on behalf of SLS, recorded a Notice of Default ("NOD") against the Property.  (FAC ¶

23.)  Over the next several months, Plaintiff would regularly seek non-foreclosure alternatives

from various agents of SLS, however, Plaintiff's efforts to seek non-foreclosure alternatives were

systematically rebuffed by SLS, and the property was foreclosed on and sold in 2021.  (FAC ¶¶

---

[1]  Defendant SLS's notice of removal states the following as to Affinia:

> The Notice of Removal is brought on behalf of Defendant SLS. Affinia Default
> Services, LLC ("Affinia") filed a declaration of non-monetary status pursuant to
> California Civil Code § 29241 in the State Court Action on July 18, 2023. As
> such, Affinia has transformed itself into a non-party to this action. Pursuant to
> California Civil Code § 29241(d), Affinia can no longer be held liable and need
> not participate in this action in any way. *Id.* Federal courts have acknowledged
> that a party that invokes non-monetary status under § 29241 need not consent to
> removal and is not to be treated as a defendant to the action. *See e.g.*, *Navarro
> Sav. Ass'n v. Lee* 446 U.S. 458, 461 (1980); *Amaro v. Option One Mortgage
> Corp.*, C.D. Cal., Jan. 14, 2009, No. EDCV08-1498VAP(AJWX)) 2009 WL
> 103302, at *1 (C.D. Cal. Jan. 14, 2009) (party that declared non-monetary status
> did not need to consent to removal of the case to federal court).

(ECF No. 1 at 3.)  The FAC again names Affinia as a Defendant but only to the second and third causes of action in
the FAC.  It is not clear if Plaintiff disputes this non-monetary status or non-party status, or if Plaintiff intends to
again name Affinia in an amended complaint.  Affinia did not join in the motion to dismiss.

24-27.)

Plaintiff brings ten causes of action in the FAC: (1) Promissory Estoppel, against SLS; (2) Violation Of Business & Professions Code § 17200, against all Defendants; (3) Declaratory Relief against all Defendants; (4) Violations Of The Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(1) against SLS; (5) Violation Of 12 C.F.R. § 1026.41, against SLS; (6) Rescission Claim Under the Truth in Lending Act ("TILA") (Reg. Z), against SLS; (7) Violation Of 15 U.S.C. § 1601 Et Seq. (TILA), against SLS; (8) FDCPA claims against SLS; (9) Violation Of The Rosenthal Act, against SLS; and (10) HOEPA claims, against SLS.

On September 25, 2023, Defendant SLS filed a motion to dismiss.  (Mot., ECF No. 6.)  Defendant also filed a request for judicial notice.  (ECF No. 7.)  On October 18, 2023, Plaintiff filed an untimely opposition.  (ECF No. 10.)  On October 27, 2023, Defendant filed a reply brief.  (ECF No. 13.)

The Court held a hearing on the motion on November 8, 2023.  (ECF No. 14.)  Safora Nowrouzi appeared on behalf of Plaintiff, and Alexandra King appeared on behalf of Defendant SLS.

**III.**

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

Courts freely grant leave to amend a complaint which has been dismissed. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (same).

## IV.

## DISCUSSION

### A.    Initial Comments Regarding Meet and Confer

Defendant's declaration specifies the parties met and conferred regarding deficiencies in the original complaint, then the FAC was filed. It does not appear the parties met and conferred after the filing of the MTD, and before the FAC was filed. The FAC was filed on September 12, 2023, motion to dismiss was filed on September 25, 2023. (ECF Nos. 5, 6.) Defense Counsel's

declaration only states counsel spoke on the phone on August 18, 2023 about the motion; advised Plaintiff of arguments and deficiencies; Plaintiff informed Defendant she intended to file an amended complaint; Plaintiff's amended complaint includes similar factual and legal deficiencies "which I raised during the parties' meet and confer discussion"; and states the "motion is made following a good faith attempt of counsel to meet and confer."  (King Decl. ¶¶ 3-5, ECF No. 6-1 at 2.)  The lack of additional meet and confer between the filing of the FAC and motion to dismiss does necessarily impact the Court's analysis somewhat, and particularly in regards to whether to grant to leave to amend.

### B.     Motion to Dismiss Promissory Estoppel Claim

Defendant moves to dismiss Plaintiff's first cause of action is for promissory estoppel, brought against Defendant SLS.  (Compl. ¶¶ 28-51.)  Defendant raises multiple avenues of attack, but the Court focuses on the primary argument that Plaintiff's FAC is conclusory and lacks an allegation of a clear, unambiguous, and enforceable promise.  In opposition, Plaintiff only responds the "FAC states that SLS met the promise element by not sending statements and not having the loan appear on Plaintiff's credit report [FAC ¶44]."  (Opp'n 3.)[2]

"Promissory estoppel applies whenever a promise *which the promissor should reasonably expect* to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance' would result in an 'injustice' if the promise were not enforced."  Granadino v. Wells Fargo Bank, N.A., 236 Cal. App. 4th 411, 418, 186 Cal. Rptr. 3d 408, 414 (2015) (citation and quotation marks omitted).  "In California, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  Mend Health, Inc. v. Carbon Health Techs., Inc., 588 F. Supp. 3d 1049, 1056 (C.D. Cal. 2022) (citing Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 792 (9th Cir. 2012)); see also US Ecology, Inc. v. State of

---

[2]  Plaintiff spends more time arguing the promissory estoppel claim is not barred by the statute of limitations, than the promise element, however, it does not appear Defendant made any statute of limitations challenge to the promissory estoppel claim, and thus not applicable to Defendant's precise challenge to the first cause of action.  (See Mot. 10-12; Opp'n 3; Reply 2-3.)

*California*, 129 Cal. App. 4th 887, 901, 28 Cal. Rptr. 3d 894, 905 (2005).

Based on the Plaintiff's bare opposition, the Court turns to paragraph 44 of the FAC, which provides, in toto: "Defendants made a clear and unambiguous promise to Plaintiff that the Loan was not past due by not sending mortgage statements, not having the Loan appear on credit reports, or contacting Plaintiff by phone or certified letter that the Loan was in default prior to 2015, in which the default amount was too much for Plaintiff to pay immediately."  (FAC ¶ 44.) At the hearing held on the motion to dismiss, given the bare opposition, the Court inquired of Plaintiff as to whether a clear and unambiguous promise is alleged in the complaint.  Plaintiff all but wholly conceded there was not, and indeed, averred that she may have to plead an alternative type of cause of action in lieu of the promissory estoppel claim.

While Plaintiff did not concede she failed to state a claim for promissory estoppel, based on the opposition, the arguments made at the hearing, the Court concludes Plaintiff has failed to allege a clear and unambiguous promise.  The Court cannot construe the allegations in paragraph 44 that are solely based on a *lack* of communication, to be a clear and unambiguous promise between the parties.  See Mend Health, 588 F. Supp. 3d at 1056 ("To be enforceable, 'a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.' " (quoting Ladas v. California State Auto. Ass'n, 19 Cal. App. 4th 761, 770 (1993))).

Accordingly, the Court recommends Defendant's motion to dismiss be granted with leave to amend to replead a promissory estoppel claim, only to the extent Plaintiff in good faith believes she can plead facts that would support such a cause of action in light of the legal standards above.  Plaintiff may alternatively attempt to bring, in good faith, a different type of cause of action that may fit within the particular facts of her case.

## C.    Motion to Dismiss UCL Claim

Defendant SLS moves to dismiss Plaintiff's second cause of action brought pursuant to California Business and Professions Code § 17200, et seq., brought against all Defendants. (FAC ¶¶ 52-66.)

Under California's Unfair Competition Law, "unfair competition shall mean and include

any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  Cal. Bus. & Prof. Code § 17200. "Therefore, there are three prongs under which a claim may be established under § 17200." Joe Hand Promotions, Inc. v. Alvarado, No. 1:10-CV-00907 LJO, 2011 WL 1544501, at *6 (E.D. Cal. Apr. 21, 2011); see Daro v. Superior Ct., 151 Cal. App. 4th 1079, 1093, 61 Cal. Rptr. 3d 716, 724 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition under the UCL."); Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007) ("Because the statute is written in the disjunctive, it is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements).").

   1. The Underlying Claims Fail under the Unlawful Prong

  "The 'unlawful' act prong of the UCL embraces 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " Daro, 151 Cal. App. 4th at 1093 (quoting Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)); Barajas v. Blue Diamond Growers Inc., No. 1:20-CV-0679 JLT SKO, 2023 WL 2333548, at *21 (E.D. Cal. Mar. 2, 2023) (same). "Thus, the UCL 'borrows' violations of other laws and makes them independently actionable as unfair competitive practices." Daro, 151 Cal. App. 4th at 1093; Barajas, , 2023 WL 2333548, at *21 (same).

  "To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate violation, and (2) an accompanying economic injury caused by the violation." Barajas, , 2023 WL 2333548, at *22 (quoting Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc., No. 2:17-CV-01515-KJM-AC, 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020)).  "Predicate violations include 'any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.' " Barajas, 2023 WL 2333548, at *22 (quoting Saunders v. Superior Ct., 27 Cal. App. 4th 832, 838, 33 Cal. Rptr. 2d 438 (1994)).

1    As the Court found above as to promissory estoppel, and finds below as to all remaining

2  causes of action, Plaintiff has failed to properly state a claim for a violation of any law.

3  Therefore, Plaintiff fails to state a claim under the UCL's unlawful prong.  See Rosal v. First

4  Fed. Bank of California, 671 F. Supp. 2d 1111, 1126 (N.D. Cal. 2009) ("Where a plaintiff cannot

5  state a claim under the 'borrowed' law, she cannot state a UCL claim either."); Barajas, 2023

6  WL 2333548, at *22 ("[A] plaintiff must allege facts to support any alleged predicate violations

7  of state and federal law . . . For example, if a plaintiff alleges facts sufficient to support claims

8  for violations of the FLSA and California Labor Code, the federal and state statutes are proper

9  predicate violations under the UCL . . . Plaintiffs failed to allege facts sufficient to support their

10  claims for overtime wages, minimum wages, meal periods, rest breaks, and failure to pay wages

11  due upon termination [and] [c]onsequently, these alleged violations cannot support their UCL

12  claim."); Krantz v. BT Visual Images, L.L.C., 89 Cal. App. 4th 164, 178, 107 Cal. Rptr. 2d 209

13  (2001) (claim "for relief under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)—

14  stand or fall[s] depending on the fate of the antecedent substantive causes of action."); Kimball

15  v. Flagstar Bank F.S.B., 881 F. Supp. 2d 1209, 1223–24 (S.D. Cal. 2012) ("Because Plaintiffs

16  have failed to state claims for any underlying violation of state or federal law, they cannot

17  proceed on their unfair competition law claim under Section 17200."); Silvas v. E*Trade Mortg.

18  Corp., 514 F.3d 1001, 1007 n.3 (9th Cir. 2008) (dismissing UCL claim based on underlying

19  TILA claim barred by statute of limitations as party sought "to take advantage of the longer

20  statute of limitations under UCL to remedy TILA violations, because without the extended

21  limitations period their claims would be barred.").

22    Even taking the allegations contained only in the specific cause of action (FAC ¶¶ 52-66),

23  Plaintiff fails to state a claim, as "[a]llegations supporting a claim under the unlawful prong of

24  the UCL 'must state with reasonable particularity the facts supporting the ... elements' of the

25  alleged violation."  Carter v. Bank of Am., N.A., No. CV1206424MMMFFMX, 2012 WL

26  12887542, at *10 (C.D. Cal. Dec. 12, 2012) (quoting Silicon Knights, Inc. v. Crystal Dynamics,

27  Inc., 983 F.Supp. 1303, 1316 (N.D. Cal. 1997)).

28  / / /

2.      <u>Plaintiff fails to allege any unfair business practices.</u>

Defendant proffers that under the UCL, "a business practice is 'unfair' only if it 'threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition," <u>Drum v. San Fernando Valley Bar Ass'n</u>, 106 Cal. Rptr. 3d 46, 51 (2010) (quoting <u>Cel-Tech Commc'ns, Inc. V. Los Angeles Cellular Telephone Co.</u>, 973 P.2d 527, 565 (Cal. 1999)).  (Mot. 13.)

This is an incomplete or inaccurate proffer by Defendant SLS.  Drum and other caselaw indeed indicate that the test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer.  The statement in Drum clearly begins and states: "**In competitor cases**, a business practice is "unfair" only if it "threatens an incipient violation of an antitrust law . . . " <u>Drum</u> 182 Cal. App. 4th at 254.  This is not a competitor case.

The <u>Drum</u> court went on to explain the development of the consumer test, and three variations of the test employed.  <u>Drum</u> 182 Cal. App. 4th at 256 ("In consumer cases, the Supreme Court has not established a definitive test to determine whether a business practice is unfair . . . a split of authority developed among the Courts of Appeal, which have applied three different tests for unfairness in consumer cases.").  The <u>Drum</u> court described the three variations as follows:

> The test applied in one line of cases is similar to the *Cel–Tech* test (*Cel–Tech, supra,* 20 Cal.4th at p. 187, 83 Cal.Rptr.2d 548, 973 P.2d 527), and requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." (*Bardin, supra,* 136 Cal.App.4th at pp. 1260–1261, 39 Cal.Rptr.3d 634; *Davis, supra,* 179 Cal.App.4th at pp. 595–596, 101 Cal.Rptr.3d 697; *Gregory, supra,* 104 Cal.App.4th at p. 854, 128 Cal.Rptr.2d 389.) Under this test, plaintiff's claim fails for the reasons stated above with respect to competitor cases—plaintiff failed to allege any violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition.
>
> The test applied in a second line of cases is whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous

or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (*Bardin, supra,* 136 Cal.App.4th at p. 1260, 39 Cal.Rptr.3d 634; *Davis, supra,* 179 Cal.App.4th at pp. 594–595, 101 Cal.Rptr.3d 697; see also *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 539, 72 Cal.Rptr.3d 888.) Plaintiff failed to allege, however, how the Association's refusal to sell to any particular person its membership mailing list would be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." (*Davis, supra,* 179 Cal.App.4th at pp. 597–598, 101 Cal.Rptr.3d 697; *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770.)

Drum, 182 Cal. App. 4th at 257.

It appears the test for unfair practices is still unsettled.  See Barajas, 2023 WL 2333548, at *20 ("Recently, courts observed that what constitutes 'unfair' practices under the UCL is unsettled." (citing Doe v. CVS Pharm., Inc., 982 F.3d 1204, 1214-15 (9th Cir 2020); Obertman v. Electrolux Home Care Prods., 482 F. Supp 3d 1017, 1027 (E.D. Cal. 2020); In re Zoom Video Communs. Privacy Litig., 535 F.Supp.3d, 1047 (N.D. Cal. 2021))).

The Barajas court noted the three above tests, and noted that, "[n]evertheless, the 'traditional test for a consumer claim' is the second identified, which this Court consistently applies to evaluate claims for unfair practices."  Barajas, 2023 WL 2333548, at *21 (citing Obertman, 482 F. Supp 3d at 1027).

Defendant argues Plaintiff does not allege facts demonstrating Defendant engaged in "unfair competition."  For example, Plaintiff complains that Defendant engaged in unfair conduct by not informing Plaintiff the Loan was past due and denying Plaintiff a loan modification, (FAC ¶¶56-57), but as previously discussed, the allegations demonstrate that in 2015 when Defendant became the Loan's servicer, it notified Plaintiff the Loan was in default (FAC ¶¶ 20-21).  Additionally, Defendant emphasizes it is under no obligation to approve Plaintiff for a loan modification, and the mere fact that Plaintiff did not like the loss mitigation

10

1  options available to her does not mean Defendant engaged in unfair business practices." prong

2  claim fails.

3        Plaintiff responds in toto:

> The Complaint Pleads an Unfair Business Practice.  The FAC
> states that SLS did not send mortgage statements and made the
> loan not appear on Plaintiff's credit report. (FAC ¶44.) SLS did not
> inform Plaintiff that the loan was past due. (¶56.) SLS then sought
> foreclosure on the property and foreclosed on the property. (¶¶24,
> 26.) The FAC adequately pleads a predatory practice of causing
> borrowers to believe that mortgage loans were not due, and then
> foreclosing on the properties.

9  (Opp'n 4.)

10        The Court finds the allegations in the FAC conclusory and insufficient under any of the

11  three tests to state a claim for unfair business practices.  See Barajas, 2023 WL 2333548, at *21

12  ("Plaintiffs merely parrot the traditional test and do not allege any *facts* to support their claim . . .

13  [g]iven the lack of factual allegations, Plaintiffs fail to state a claim under this prong . . . [as]

14  "specific facts must be pled to support a theory of an unfair business practice.' " (quoting Teton

15  Global Invs. LLC v. LC Inv. 2010, 2021 WL 5861565, at *3 (S.D. Cal. Aug. 11, 2021))).

16        3.   Fraudulent Business Practices

17        "A 'fraudulent' act is 'one which is likely to deceive the public,' and 'may be based on

18  misrepresentations ... which are untrue, and also those which may be accurate on some level, but

19  will nonetheless tend to mislead or deceive.' "  Barajas, 2023 WL 2333548, at *21 (citation

20  omitted).  "Thus, the word 'fraudulent' under Section 17200 'does not refer to the common law

21  tort of fraud,' . . . but still requires allegations that the misrepresentation was directly related to

22  injurious conduct, and that the claimant actually relied on the alleged misrepresentation."  Id.

23  "Claims based upon the 'fraudulent' prong are subject to the heightened pleading requirements

24  of Rule 9(b) of the Federal Rules of Civil Procedure."  Id. (citing Kearns v. Ford Motor Co., 567

25  F.3d 1120, 1127 (9th Cir. 2009)); Beatty v. PHH Mortg. Corp., No. 19-CV-05145-DMR, 2019

26  WL 6716295, at *13 (N.D. Cal. Dec. 10, 2019) (same).

27        The Court finds Plaintiff has failed to state sufficient facts to allege a UCL claim under

28  the fraudulent act prong, under the heightened pleading standard.  See Barajas, 2023 WL

2333548, at *21 ("Plaintiffs do not identify any specific misrepresentation made by Blue Diamond Growers, or assert they relied upon the misrepresentation.  The sparse allegations fail to comply with Rule 8, let alone satisfy the heightened pleading requirements of Rule 9."); Beatty v. PHH Mortg. Corp., No. 19-CV-05145-DMR, 2019 WL 6716295, at *14 (N.D. Cal. Dec. 10, 2019) ("The complaint is devoid of allegations that suggest fraudulent conduct by the Defendants; therefore, Beatty's UCL claim may proceed only under the unlawful and unfair prongs."); Kimball, 881 F. Supp. 2d at 1224 ("[T]o the extent that Plaintiffs claim is based on or grounded in fraud or deceptive conduct by Defendants, the claim fails to meet Rule 9(b) pleading standards.").

### 4.    The Court Recommends the UCL Claim be Dismissed

The Court recommends granting dismissal on the above grounds.  Nonetheless, the Court additionally finds support in Defendant's arguments that the UCL claim should be dismissed for lack of standing.  See Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1179–80 (E.D. Cal. 2010) ("Defendants correctly note the complaint's absence of facts of Mr. and Mrs. Hamilton's money or property allegedly lost due to a UCL violation.").

Accordingly, the Court recommends Defendant's motion to dismiss be granted with leave to amend only to the extent Plaintiff in good faith believes she can allege facts that comply with the legal standards expressed above.  See Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1179–80 (E.D. Cal. 2010) ("The complaint is insufficient to establish that defendants engaged in unfair business practices under the UCL.  In the absence of violation of a borrowed law, a UCL claim fails in that it cannot rest on alleged irregularities in the loan transaction or completed foreclosure proceedings.  The complaint lacks claims under the federal and state statutes addressed above.  The complaint points to no predicate violation of law.  The complaint lacks reasonable particularity of facts to support a UCL claim.  The complaint's bare reference to federal and state statutes and common law remedies provides not the slightest inference that Mr. and Mrs. Hamilton have a viable UCL claim.  The UCL claim lacks particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim.  The complaint lacks allegations of ongoing wrongful business conduct or a pattern of such conduct.  The complaint lacks facts to

1  hint at a wrong subject to the UCL to warrant dismissal of a purported UCL claim against

2  defendants.").

3         **D.     Motion to Dismiss Claim for Declaratory Relief**

4         Plaintiff's third cause of action is for declaratory relief, against all Defendants.  (FAC ¶¶

5  67-71.)  Defendant moves to dismiss the claim for declaratory relief based on three primary

6  arguments.  First, it seeks a determination of issues that will be determined in the underlying

7  causes of action.  See California Ins. Guarantee Assn. v. Superior Ct., 231 Cal. App. 3d 1617,

8  1623, 283 Cal. Rptr. 104 (Ct. App. 1991) ("Generally, an action in declaratory relief will not lie

9  to determine an issue which can be determined in the underlying tort action."); Hood v. Superior

10  Ct., 33 Cal. App. 4th 319, 324, 39 Cal. Rptr. 2d 296 (1995) ("The issues invoked in that cause of

11  action already were fully engaged by other causes of action. Because they were, declaratory

12  relief was unnecessary and superfluous.").  Second, that Plaintiff is not entitled to declaratory

13  relief without a viable underlying claim, and the claim fails along with the other claim.  See

14  Ronald Cohn, Inc. v. Sprouts Farmers Mkt., Inc., No. 19CV848-JAH (RBB), 2021 WL 120896,

15  at *7 (S.D. Cal. Jan. 13, 2021) ("A plaintiff is not entitled to such relief without a viable

16  underlying claim. As such, when the underlying claim is dismissed, the declaratory relief cause

17  of action must be dismissed as well.").  Third, that the claim improperly seeks to remedy a past

18  wrong, as declaratory relief "operates prospectively to declare future rights, rather than to redress

19  past wrongs."  Cnty. of San Diego v. State of California, 164 Cal. App. 4th 580, 607 (2008)

20  (quoting Canova v. Trustees of Imperial Irrigation Dist. Emp. Pension Plan, 150 Cal. App. 4th

21  1487, 1497 (2007)); Otay Land Co. v. Royal Indem. Co., 169 Cal. App. 4th 556, 563 (2008)

22  ("[U]nder California rules, an actual controversy that is currently active is required for such

23  relief to be issued, and both standing and ripeness are appropriate criteria in that

24  determination.").

25         Plaintiff wholly failed to respond to any of the arguments concerning declaratory relief in

26  the opposition, and the Court may consider the issue conceded.  See Tyler v. Travelers Com. Ins.

27  Co., 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing

28  to address them in her opposition."); Conservation Force v. Salazar, 677 F. Supp. 2d 1203, 1211

1   (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim

2   is deemed waived."), aff'd, 646 F.3d 1240 (9th Cir. 2011).

3          Additionally, the Court inquired at the hearing why Plaintiff did not address this claim,

4   and Plaintiff conceded this claim should be dismissed, primarily based on the argument that

5   Plaintiff is improperly seeking to remedy a past wrong.

6          Accordingly, based on a lack of opposition to dismissal, and concession that the claim

7   should be dismissed, the Court recommends that Defendant's motion to dismiss the third cause

8   of action for declaratory relief be granted, without leave to amend.

9          **E.     Motion to Dismiss Equal Credit Opportunity Act Claim**

10         Defendant first argues that Plaintiff wholly fails to allege that she is a member of a

11  protected class under the Equal Credit Opportunity Act ("ECOA") or that she was indeed denied

12  "credit" on the basis of her ECOA protected-class status, and thus Plaintiff lacks standing to

13  pursue any ECOA claim.  See Ambers v. Wells Fargo Bank, N.A., No. 13-CV-03940 NC, 2014

14  WL 883752, at *13 (N.D. Cal., Mar. 3, 2014).  Plaintiff responds as to this argument, that "[t]his

15  may be a requirement for some claims under Section 1691[,] [h]owever, here Plaintiff states a

16  claim for failure to provide reasons for adverse actions, which does not require that Plaintiff is a

17  member of a protected class.  (Opp'n 4.)  Defendant responds that Plaintiff conclusively states

18  that she does not need to allege that she is a member of a protected class to bring forth her claim.

19  While conclusory, Defendant does not directly refute the Plaintiff's proffer, and provides no

20  authority on the issue.

21         The Court find the weight of the authority, although not directly addressed by the Ninth

22  Circuit, supports Plaintiff's proffer.  However, the Defendant's motion should be granted for

23  other reasons, so the Court need not make a definitive determination based on this question.

24         In the moving papers, Defendant proffers the elements for an ECOA claim require a

25  plaintiff to allege "that: (1) she is a member of a protected class; (2) she applied for credit with

26  defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified."

27  Ambers, 2014 WL 883752, at *13 ("[W]hile the Ninth Circuit has not had an opportunity to

28  articulate a standard for ECOA discrimination claims, other circuits apply a multi-element test to

determine whether a plaintiff has properly pleaded a claim of discrimination under ECOA." (citing Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F.Supp.2d 1039, 1045 (N.D. Cal. 2009); Harvey v. Bank of Am., N.A., 906 F.Supp.2d 982, 990 (N.D. Cal. 2012))).

Subsequent cases in the Northern District have distinguished Ambers.  In Vasquez, the court "view[ed] these pleading requirements as applicable to Plaintiff's ECOA claim only to the extent that she claims she was actually the victim of discrimination [as] [n]otably, Hafiz did not involve the procedural notice requirements of the ECOA [and] [thus] ECOA's procedural requirements apply regardless of whether the Hafiz prerequisites have been satisfied." Vasquez, 2013 WL 6001924, at *11–12.

More importantly and broadly, the Court's research has determined that the weight of the authority takes the position that a plaintiff does not need to allege that they are a member of a protected class to state a claim under the notice provision of ECOA.  See Chen v. Chase Bank USA, N.A., 393 F. Supp. 3d 850, 852–53 (N.D. Cal. 2019) ("Plaintiff need not allege that Defendant denied him credit due to unlawful discrimination to fall within ECOA's zone of interests . . There are two different potential ECOA violations: claims for discrimination (15 U.S.C. § 1691(a)) and claims for inadequate notice (15 U.S.C. § 1691(d)). These are separate causes of action with their own elements . . . As there is nothing in ECOA's notice provision that requires allegations of discrimination, ECOA notice claims do not require the plaintiff to plead and prove discrimination." (citing Green v. Central Mortgage Co., 148 F. Supp. 3d 852, 879 (N.D. Cal. 2015); Davis v. U.S. Bancorp, 383 F.3d 761, 766 (8th Cir. 2004); Vasquez, 2013 WL 6001924 at *11)); London v. Wells Fargo Bank, N.A., No. 2:17-CV-00687-KJM-AC, 2018 WL 621262, at *9 (E.D. Cal. Jan. 29, 2018) ("Although the Ninth Circuit in Schlegel did not explicitly state that ECOA's notice provisions are distinct from the anti-discrimination provisions, courts in the Ninth Circuit have found the notice provisions can give rise to a claim even with no accompanying discrimination claims . . . [t]his reading is supported by the regulations implementing ECOA." (citations omitted)); Cooksey v. Select Portfolio Servicing, Inc., No. 2:14-CV-1237 KJM KJN, 2014 WL 4662015, at *4 (E.D. Cal. Sept. 18, 2014) (same); McMahon v. JPMorgan Chase Bank, N.A., No. 2:16-CV-1459-JAM-KJN, 2017 WL 2363690, at

*3 (E.D. Cal. May 31, 2017) (same); Jochum v. Pico Credit Corp. of Westbank, 730 F.2d 1041, 1044 n.3 (5th Cir. 1984) ("The plaintiffs have not alleged any discrimination prohibited by § 1691(a) of the Act . . . [n]evertheless, they have stated a cognizable claim under the Act should they prove, as alleged, that Pico as a creditor failed to comply with the separate and independent notification requirements of § 1691(d).").

The Court briefly turns to the legislative history underlying these courts decisions. "ECOA was enacted in 1974, providing that 'it shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction' on the basis of specific classifications. Chen., 393 F. Supp. 3d at 853 (quoting 15 U.S.C. § 1691). "ECOA's notice requirement, § 1691(d), was added by amendment in 1976 along with protections based on race, color, and national origin that supplemented ECOA's existing sex and gender protections." Id. (citing Pub. L. No. 94-239 (1976)). "ECOA's original purpose is 'to require that financial institutions and other firms engaged in the extension of credit make that credit equally available to all credit-worthy customers without regard to [the protected classifications].' " Pub. L. 93-295, § 502 (1974). "In enacting the 1976 amendments, Congress viewed the new 'requirement that creditors give reasons for adverse action' as fulfilling a separate educational or informational goal as well." Chen., 393 F. Supp. 3d at 853 (quoting S. REP. 94-589, 4, 1976 U.S.C.C.A.N. 403, 406)). The Congressional Report states:

> The requirement that creditors give reasons for adverse action is, in the Committee's view, a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

S. REP. 94-589, 4, 1976 U.S.C.C.A.N. 403, 406. Based on the legislative intent, courts have

1  held being a member of a protected class is not required.  See, e.g., Chen., 393 F. Supp. 3d at 854

2  ("Congress's intent to provide 'valuable educational benefits' through ECOA's notice

3  requirement therefore operates alongside and in conjunction with ECOA's original anti-

4  discrimination goal . . . Thus, a plaintiff need not allege that he was discriminated against to fall

5  within section 1691(d)'s zone of interests and qualify as an 'aggrieved person' eligible to bring

6  an ECOA notice claim.").

7       Therefore, the Court finds that given Defendant's lack of substantive response, despite

8  Plaintiff's similar lack of authority, and based on the above weight of authority, the Court

9  declines to grant the motion to dismiss on grounds of the Plaintiff being required to be a member

10 of a protected class.  However, the Court would be open to further briefing on the issue on any

11 subsequent motion to dismiss as it is not determinative to the matter here.  The Court does not

12 view the issue as settled in the Ninth Circuit, and is not making a finding based determinative of

13 that issue.  See Banks v. JPMorgan Chase Bank, N.A., No. LA CV14-06429 JAK, 2014 WL

14 6476139, at *15 (C.D. Cal. Nov. 19, 2014).

15      Turning to Defendant's other arguments, Defendant argues Plaintiff has not properly

16 alleged that she submitted a complete application for a loan modification such that the ECOA's

17 thirty-day notice requirement would apply, 15 U.S.C.S. § 1691(d)(1); that pursuant to 12 C.F.R.

18 § 202.2(f), a complete application is one in which a creditor has received all the information that

19 the creditor regularly obtains and considers in evaluating applications for the amount and type of

20 credit requested, 12 C.F.R. § 202.2(f), and that the ECOA provides that "[w]ithin thirty days ...

21 after receipt of a completed application for credit, a creditor shall notify the applicant of its

22 action on the application," 15 U.S.C. § 1691(d)(1).  Defendant emphasizes Plaintiff states that

23 she "applied for a COVID-related forbearance or loan modification with the Socotra Companies"

24 not with Defendant SLS, (FAC ¶ 76), and that Plaintiff inquired about forbearance and loss

25 mitigation applications with Defendant, but not that she submitted a complete application.

26      Plaintiff essentially only responds that the FAC pleads that SLS was a creditor (FAC

27 ¶73), and pleads that Defendant did not provide any reasons for denying Plaintiff credit (FAC

28 ¶¶83, 84, 87).  (Opp'n 4.)  Plaintiff's complaint and opposition are too vague and conclusory for

1   the Court to find a plausible claim is stated.

2       ECOA "makes it illegal 'for any creditor to discriminate against any applicant, with

3   respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin,

4   sex or marital status, or age.' "  Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1210 (9th

5   Cir. 2013) (quoting 15 U.S.C. § 1691(a)(1)).  "One way that ECOA effectuates this goal is

6   through its notice requirement, which states: 'Each applicant against whom adverse action is

7   taken shall be entitled to a statement of reasons for such action from the creditor.' "  Schlegel,

8   720 F.3d at 1210 (quoting 15 U.S.C. § 1691(d)(2)).  "When a creditor takes an adverse action

9   against an applicant without giving the required notice, the applicant may sue for a violation of

10   ECOA."  Schlegel, 720 F.3d at 1210 (quoting 15 U.S.C. § 1691e ("Any creditor who fails to

11   comply with any requirement imposed under this subchapter shall be liable to the aggrieved

12   applicant for any actual damages sustained by such applicant.")).  "ECOA defines an "adverse

13   action" as a: denial or revocation of credit, a change in the terms of an existing credit

14   arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms

15   requested."  Schlegel, 720 F.3d at 1210 (quoting 15 U.S.C. § 1691(d)(6).  "Such term does not

16   include a refusal to extend additional credit under an existing credit arrangement where the

17   applicant is delinquent or otherwise in default, or where such additional credit would exceed a

18   previously established credit limit."  Id.

19       The Court finds the arguments raised by Defendant, that were largely unaddressed,

20   support dismissal.  For example, Plaintiff does not address the fact that the complaint states:

21   "Plaintiff applied for COVID-related forbearance or loan modification with the **Socotra**

22   **Companies** on at least three occasions."  (FAC ¶ 76 (emphasis added).)  Not only is this not a

23   named Defendant, the allegation itself is vague.

24       Plaintiff makes the conclusory allegation that "Plaintiff's requests for a COVID-related

25   forbearance or modification were 'applications for credit' as defined by 15 U.S.C. § 1691a(d)

26   and 12 C.F.R. § 202.2(j).  (FAC ¶81)  Plaintiff vaguely alleges that "Knowing that she would be

27   exhausting all her savings and prior to her default, Plaintiff would repeatedly contact SLS to

28   inquire about forbearance and loss mitigation applications and where to submit such applications

so as to provide SLS with a complete application for credit, COVID-related forbearance and loan modification applications."  (FAC ¶ 82.)  Plaintiff then makes the conclusory statement that: "SLS violated 15 U.S.C. § 1691(d)(1) and 15 U.S.C. § 1691(d)(2) when it failed to evaluate and make a determination on Plaintiff's requests for credit, COVID related forbearance and loan modification."  (FAC ¶ 83.)

Looking to the general factual allegation section, the allegations there are similarly too vague to support a claim of a completed application.  (See FAC ¶¶ 20 ("In or around 2015, SLS contacted Plaintiff, demanding full payment of the Loan in the amount of $42,000.00 plus taxes and fees"), ¶ 21 ("It was at this time that Plaintiff learned that (1) SLS was the servicer of the Loan, and (2) that the Loan was in default"), ¶ 22 ("Around this time, Plaintiff requested to be reviewed for loss mitigation options, which were rebuffed and ignored by SLS"), ¶ 24 ("Over the next several months, Plaintiff would regularly seek non-foreclosure alternatives from various agents of SLS.  However, Plaintiff's efforts to seek non-foreclosure alternatives were systematically rebuffed by SLS").)

Based on the above allegations, the Court finds Plaintiff fails to allege sufficient facts to demonstrate she submitted a completed application to Defendant SLS.  See Errico v. Pac. Cap. Bank, N.A., No. C 09-04072 JW, 2010 WL 11706762, at *3 (N.D. Cal. Feb. 17, 2010) ("The Court finds that Plaintiffs do not allege sufficient facts showing that they submitted a completed application to state a claim for relief under the ECOA.  While the Court acknowledges that Plaintiffs allege some facts that could conceivably represent portions of the application process, such as providing to Defendants an itemized cost detail, the Complaint is silent as to what act or acts constituted Plaintiffs' submission of the completed application.  The Complaint is also silent as to what type of information Defendants regularly obtain in evaluating applications for the amount and type of credit that Plaintiffs sought, and as to the procedures that Defendants normally used for the type and amount of credit that Plaintiffs requested.  Thus, the Court has no basis upon which to determine whether the information Plaintiffs allege that they provided to Defendants is sufficient to constitute a completed application.  Since liability under the ECOA hinges on whether a completed application has been submitted, Plaintiffs' ECOA claim fails as a

matter of law.").

Plaintiff never addressed the reference to Socotra Companies in the FAC.  See McMahon v. JPMorgan Chase Bank, N.A., No. 2:16-CV-1459-JAM-KJN, 2017 WL 2363690, at *3 (E.D. Cal. May 31, 2017) ("Chase next argues McMahon has not actually alleged his ECOA claim against Chase, but only SPS . . . Chase is correct: McMahon alleges in his FAC under the second claim that he 'provided SPS with a completed application for credit on March 21, 2014 and January 13, 2015.' FAC ¶ 126.  McMahon does not allege he ever submitted a completed application for credit to Chase.").

Accordingly, the Court recommends Defendant's motion to dismiss be granted as to the ECOA claim.  See Errico, 2010 WL 11706762, at *3 ("[The] bare-bones allegations that they 'applied for a construction loan' and submitted a 'completed application' are [not] sufficient to state a claim under the ECOA . . . Since 'application' and 'completed application' are specifically defined terms under the ECOA and its regulations, and submitting a completed application is an essential element of the cause of action, Plaintiffs' conclusory allegations that they submitted a completed application are insufficient to state a claim under the ECOA.").

### F.    Motion to Dismiss Fifth, Sixth, And Seventh Causes under TILA

Plaintiff's fifth, sixth, and seventh causes of action are brought under the Truth in Lending Act ("TILA").  Plaintiff's fifth cause of action is for violation of 12 C.F.R. § 1026.41. (FAC ¶¶ 92-99.)  Plaintiff's sixth cause of action is for rescission under TILA.  (FAC ¶¶ 100-109.)  Plaintiff's seventh cause of action is for violation of TILA, 15 U.S.C. § 1601, et seq. (FAC ¶¶ 110-119.)

Defendant argues Plaintiff simple reference to various TILA statutes does not relieve her of the obligation to plead allegations with specificity, and argue Plaintiff fails to allege sufficient facts for the fifth, sixth, and seventh causes of action.  The Court sets aside the factual arguments for now, which are somewhat undeveloped by both Defendant and Plaintiff.  (See Mot. 19-20, Opp'n 5, Reply 8.)[3]

---

[3]  For example, if these claims are replead despite the Court's recommendation to dismiss without leave to amend, through allegations of equitable tolling or otherwise, the Court expects Defendant to develop the factual arguments

Rather, the Court finds the TILA actions should be dismissed without leave to amend as barred by the statute of limitations, and for the failure by Plaintiff to plead any facts showing the possibility of equitable tolling.

TILA provides a one year statute of limitations for civil damages claims and a three year statute of repose for rescission claims, 15 U.S.C. §§ 1635(f) and 1640(e), and Defendant proffers both of these periods commenced at the time the loan was entered.  See King v. California, 784 F.2d 910, 914 (9th Cir.1986).

Section 1640(e) of TILA provides that "Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).[4]  In King, the Ninth Circuit examined the issue of "when a violation occurs so as to commence the one-year statutory period."  King, 784 F.2d at 913.  There, the Ninth Circuit considered various theories of commencement of the statutory period applied by other circuits.  784 F.2d at 913-14 ("Three theories have been used by other circuits to determine when the statutory period commences: (1) when the credit contract is executed; (2) when the disclosures are actually made (a 'continuing violation' theory); (3) when the contract is executed, subject to the doctrines of equitable tolling and fraudulent concealment (limitations period runs from the date on which the borrower discovers or should reasonably have discovered the violation).").

---

to a greater extent, and Plaintiff to file a substantive response, if a motion to dismiss is raised as to these claims again.  As an example of why the Court would be hesitant to simply find plaintiff has failed to allege sufficient facts based on the briefing before it, is looking at the fifth cause of action to start, brought under 12 C.F.R. § 1026.41. Under that regulation, "[a] servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section."  12 C.F.R. § 1026.41(b).  Without additional factual development in the motion or other specific legal authorities, it appears taking at face value, Plaintiff has stated sufficient facts for a claim of violation of this provision.  (FAC ¶¶ 93-95.)  The Court notes Defendant emphasizes the fact allegations occurred before 2015, however, have not provided clear caselaw or factual foundation demonstrating why it is clear Defendant SLS cannot be liable for conduct by another company, including factors such as relationship to the other company, whether assets or obligations, or liabilities were transferred, among other issues.

[4]  Section 1640(e) contains other specific periods under specific TILA statutes, that do not appear applicable to the complaint here, and neither party has indicated such.  See 15 U.S.C. § 1640(e) ("Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation.").

The Ninth Circuit rejected using the continuing violation doctrine "as unrealistically open-ended," and because "[i]t exposes the lender to a prolonged and unforeseeable liability that Congress did not intend." Id. at 914 (citation omitted).  The court also noted that "[o]n the other hand, an inflexible rule that bars suit one year after consummation is equally inconsistent with legislative intent [as] [a]lthough the Act may impute to borrowers knowledge of their rights as consumers of credit, there may be situations in which a borrower consummates his loan and passes a year without knowing of his lender's fraud or nondisclosures." Id. at 914.

The Ninth Circuit held a one year after consummation rule with the potential to apply equitable tolling was proper.  784 F.2d at 914–15 ("We agree with the Sixth Circuit that equitable tolling might be appropriate in certain circumstances.").  The court stated "[t]o decide whether equitable tolling should apply to Section 1640(e), our basic inquiry is whether tolling the statute in certain situations will effectuate the congressional purpose of the Truth-in-Lending Act," and that the "Supreme Court has repeatedly applied equitable tolling to statutes of limitations to prevent unjust results or to maintain the integrity of a statute." Id. at 914-915 (citations omitted).

Looking at the legislative purpose, the Ninth Circuit noted "Congress through TILA sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit," and that "courts have construed TILA as a remedial statute, interpreting it liberally for the consumer." Id. 915.  The Ninth Circuit held "the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." Id.  In other words, "as a general rule the limitations period starts at the consummation of the transaction," however, the district courts "can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly." Id. ("Since fraudulent concealment and equitable tolling involve factual determinations, we remand King's damage claims for the June 1979 loan and the March

1    1981 loan.").

2        Therefore, the one-year limitations period for damages claims under Section 1640(e),

3    generally begins to run from the date of consummation of the loan, subject to equitable tolling.

4    Id.; see also Newcomb v. Cambridge Home Loans, Inc., 861 F. Supp. 2d 1153, 1161–62 (D.

5    Haw. 2012).

6        TILA also contains a rescission limitations period.  "TILA's 'buyer's remorse' provision

7    allows borrowers three business days to rescind, without penalty, a consumer loan that uses their

8    principal dwelling as security."  Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699,

9    701 (9th Cir. 1986) (citing 15 U.S.C. § 1635(a)).  TILA requires that loan documents "state

10   specifically the last date on which the [borrower] could rescind the loan agreement without

11   penalty."  Semar, 791 F.2d at 701 (citing 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(5)).

12       "If the lending institution omits the expiration date and fails to cure the omission by

13   subsequently providing the information, the borrower may rescind the loan within three years

14   after it was consummated."  Semar, 791 F.2d at 701-702 (citing 15 U.S.C. § 1635(f) ("An

15   obligor's right of rescission shall expire three years after the date of consummation of the

16   transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that

17   the information and forms required under this section or any other disclosures required under this

18   part have not been delivered to the obligor . . . "));[5] Beach v. Ocwen Fed. Bank, 523 U.S. 410,

19   413 (1998) ("[T]he borrower's right of rescission 'shall expire three years after the date of

20   consummation of the transaction or upon the sale of the property, whichever occurs first,' even if

21   the required disclosures have never been made." (quoting 15 U.S.C. § 1635(f))).

22       Plaintiff essentially responds that: the running of the statute of limitations may be raised

23   only when it is apparent on the face of the complaint; that here, the FAC alleges that SLS failed

24

---

25   [5]  The provision continues in a manner not apparently or identified to be relevant to the determination here, stating:
     "except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to

26   enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such
     agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any

27   matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of
     consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year

28   following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is
     later."  15 U.S.C. § 1635(f).

to send periodic statements since 2009 (FAC ¶¶93, 94); "[a]at most, the statute of limitations bars the causes of actions that accrued more than one year prior to the filing of the FAC" and that from the face of the complaint, it cannot be determined that the claim is barred by the statute of limitations, and such inquiries are better suited to summary judgment.  (Opp'n 5.)

The opposition's bare assertion does not specifically discuss equitable tolling, and the argument appears to sound more like an attempt to argue the application of the continuing violation doctrine, not equitable tolling.  As noted above, the Ninth Circuit rejected application of the continuing violation doctrine to the TILA limitations period.  See King, 784 F.2d at 914 ("We reject the 'continuing violation' theory as unrealistically open-ended [and] [i]t exposes the lender to a prolonged and unforeseeable liability that Congress did not intend.").

The Court is cognizant of the particular considerations that arise when analyzing a statute of limitation defense on a motion to dismiss.  See Falcocchia v. Saxon Mortg., Inc., 709 F. Supp. 2d 860, 866 (E.D. Cal. 2010) ("Because the statute of limitations is an affirmative defense, its invocation in the context of a motion to dismiss raises specific concerns, especially when the plaintiffs raise an equitable tolling argument." (citing Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003–04 (9th Cir. 2006))).  However, the Court finds Plaintiff points to no facts that would support equitable tolling in the complaint, and gave no proffer of additional facts that could be plead that would possibly demonstrate equitable tolling.

"A motion to dismiss on statute of limitations grounds cannot be granted if 'the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine.' "  Falcocchia, 709 F. Supp. 2d at 866 (quoting Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993)).  "The Ninth Circuit has held that plaintiffs failed to show the potential applicability of the equitable tolling doctrine where 'it [was] clear that [plaintiffs] have had the information necessary to bring suit ... for many years,' and plaintiffs did not argue that 'extraordinary circumstances beyond [their] control made it impossible to file the claims on time.' "  Falcocchia, 709 F. Supp. 2d at 866 (quoting Huynh, 465 F.3d at 1004).

Plaintiff has offered no facts that could support equitable tolling, the Court finds it clear

1    Plaintiff had the information necessary to bring suit for many years, and has not presented a basis
2    in the complaint to support equitable tolling, such as by alleging extraordinary circumstances
3    beyond their control  that made it impossible to file the claims on time.  Plaintiff has not alleged
4    facts that show they "were in any other way ignorant of the factual basis of their TILA damages
5    claim at the time that claim accrued."   Falcocchia, 709 F. Supp. 2d at 866–67 ("Because
6    plaintiffs' claim is based on failure to disclose information, plaintiffs were aware of the claim's
7    basis when they knew that information was not disclosed.   Plaintiffs therefore have not
8    demonstrated a possibility of tolling, and their TILA civil damages claim is time barred.").

9         Plaintiff's Loan was admittedly consummated on October 27, 2006.  (FAC, ¶ 12.)  In
10   sum, Plaintiff claims Defendant violated TILA by failing to send periodic statements since 2009
11   (FAC, ¶ 93); and Plaintiff states that in 2015, she became aware of her Loan and the absence of
12   billing statements(FAC, ¶49).  However, Plaintiff waited until 2023, more than eight years after
13   the alleged misconduct, to raise a TILA claim.  Further, Plaintiff has not alleged in any way that
14   she was ignorant of the factual basis of her TILA damages claims at the time the claims accrued.
15   Plaintiff therefore has not demonstrated a possibility of tolling.

16        Accordingly, for the above reasons, the Court recommends granting Defendant's motion
17   to dismiss the TILA Actions – the Fifth, Sixth, And Seventh Causes, without leave to amend, as
18   barred by the statute of limitations.

19              **G.    Motion to Dismiss FDCPA and Rosenthal Act Claims**

20        Defendant moves to dismiss Plaintiff's eighth and ninth claims arguing Plaintiff fails to
21   state enough facts against Defendant to establish that Defendant violated the Rosenthal Act or
22   the FDCPA.  (Mot. 21-22.)  Defendant argues that Plaintiff states without any factual foundation
23   that Defendant violated various provisions of the FDCPA and Rosenthal Act (FAC ¶¶ 122-124, ¶
24   129); and that Plaintiff conclusively alleges that Defendant intentionally engaged in conduct
25   done with the purpose of coercing Plaintiff to pay money she did not owe.  (FAC ¶ 130).  (Mot.
26   21.)  Defendant further argues Plaintiff has not set forth the calculations of interest, fees, or any
27   "amount owed" that they allege were in violation of the FDCPA; has not cited any legal
28   authority to support her claim that she does not owe on the Loan; fails to plead facts explaining

1    why Defendants were "federally prohibited" from collecting interest and fees; and presents

2    allegations too vague to permit an inference of Defendants' liability.  (Mot. 21-22.)

3        Plaintiff again provides the Court with little assistance, only responding, in toto, that:

4    "[t]he FAC states that SLS was the servicer on Plaintiff's mortgage (FAC ¶ 35, 36) and made

5    contact with Plaintiff (¶35)[;] [t]he FAC alleges that SLS failed to provide validation notices[;]

6    [and] [t]his is sufficient to state a claim under the FDCPA and California's corresponding

7    Rosenthal Act governing debt collection under Federal short and plain pleading standards.."

8    (Opp'n 5.)

9        Turning to the complaint, Plaintiff specifically alleges: "SLS violated FDCPA in the

10   following particulars: By failing to provide a validation notice under 15 U.S.C. § 1692e(11) and

11   within five days of the initial communication under 15 U.S.C. § 1692g; [through] [t]he use of

12   false or misleading representations or deceptive means to collect or attempt to collect a debt in

13   violation of 15 U.S.C. §§ 1692e and 1692e(10); and [t]he use of unfair or unconscionable means

14   to collect or attempt to collect any debt in violation of § 1692f."  (FAC ¶¶ 121-124.)  In the ninth

15   cause of action, Plaintiff also alleges: "Defendant SLS violated the Rosenthal Act.  Specifically,

16   their conduct is prohibited by California Civil Code §§ 1788.17, 1788.52, 1788.56, 1788.58, and

17   15 U.S.C. §§ 1692d, 1692e, 1692e(2)(a), 1692e(8), 1692f, and 1692f(1)."  (FAC ¶ 129.)

18       The Court will not discuss every provision cited, but turns to discuss the general law and

19   some of the specific provisions.

20       "A debt collector may not use any false, deceptive, or misleading representation or means

21   in connection with the collection of any debt."  15 U.S.C. § 1692e.  Section 1692e then describes

22   specific conduct that "is a violation" of the section, "[w]ithout limiting the general application of

23   the foregoing" guiding rule.  Id.  For example, cited in the complaint, 15 U.S.C. § 1692e(10)

24   specifies the following is a violation: "[t]he use of any false representation or deceptive means to

25   collect or attempt to collect any debt or to obtain information concerning a consumer."

26   Additionally, 15 U.S.C. § 1692e(11) specifies the following is a violation: "[t]he failure to

27   disclose in the initial written communication with the consumer and, in addition, if the initial

28   communication with the consumer is oral, in that initial oral communication, that the debt

collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector."   Courts nave noted the "purpose of the FDCPA requires a liberal construction of § 1692e(11) so as to protect the least sophisticated consumer," and "[c]onsequently, courts 'have tended to enforce' this Section 'strictly.' "   Lyon, 2017 WL 2350447, at *4 (first quoting Costa v. Nat'l Action Fin. Servs., 634 F. Supp. 2d 1069, 1076 (E.D. Cal. 2007); then quoting Calvert v. Alessi & Koenig, LLC, No. 2:11–CV–00333–LRH–PAL, 2013 WL 592906, at *5 (D. Nev. Feb. 12, 2013)).   Relatedly, Section 1692g provides that "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" the amount of debt, the name of the creditor, and other information.   15 U.S.C. § 1692g(1)-(5).

"A debt collector's liability under § 1692e of the FDCPA is an issue of law."   Lyon v. Bergstrom L., Ltd., No. 116CV00401DADSKO, 2017 WL 2350447, at *4 (E.D. Cal. May 31, 2017) (quoting Forkum v. Co-Operative Adjustment Bureau, Inc., 44 F. Supp. 3d 959, 962 (N.D. Cal. 2014)).   "Whether conduct violates [Section 1692e] ... requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.' "   Lyon, 2017 WL 2350447, at *4 (quoting Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010).

A violation of the FDCPA is generally a violation of the Rosenthal Fair Debt Collection Practices Act.   See Cal. Civ. Code § 1788.17 ("Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.")[6]; Riggs v. Prober & Raphael, 681 F.3d

---

[6]   The statute contains minor exceptions not apparently relevant to the instant analysis.   See Cal. Civ. Code § 1788.17 ("However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal."); 15 U.S.C. § 1692a(A)-(B) (term "debt collector" "does not include . . . (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor; (B) any person while acting as a debt

1097, 1100 (9th Cir. 2012) ("The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements, including those described above, and makes available the FDCPA's remedies for violations [and] [t]hus, for purposes of this case, whether a validation notice violates the Rosenthal Act turns on whether it violates the FDCPA."); Woodward v. Collection Consultants of California, 381 F. Supp. 3d 1234, 1239 (C.D. Cal. 2019) (citing Cal. Civ. Code § 1788.17), aff'd, 801 F. App'x 521 (9th Cir. 2020).

The Court agrees with Defendant that Plaintiff's complaint only presents bare legal conclusions without sufficient factual content to plausibly state a claim for violation of the FDCPA or Rosenthal Act. The only direct allegation is that Defendant failed "to provide a validation notice under 15 U.S.C. § 1692e(11) and within five days of the initial communication under 15 U.S.C. § 1692g." (FAC ¶ 122.) However, that allegation does not describe any information about when or how the initial communication was made. The Court notes that in a separate section of the complaint with no reference to this claim, Plaintiff generally states: "In or around 2015, SLS contacted Plaintiff, demanding full payment of the Loan in the amount of $42,000.00 plus taxes and fees." (FAC ¶ 35.) Even this allegation is vague concerning the year, and makes no indication of the manner of communication, whether written or otherwise.

The Court simply finds insufficient factual allegations to plausibly support a cause of action, and finds Plaintiff only asserts nearly completely bare legal conclusions as to these two causes of action. Like in Novobilski and other cases, the Court finds insufficient factual allegations to state a claim and that the motion should be granted. See Novobilski v. Specialized Loan Servicing, LLC, No. 222CV00147MEMFMARX, 2022 WL 17218504, at *3–4 (C.D. Cal. Apr. 22, 2022) ("These allegations are insufficient, however, to put SLS on notice as to the specific *facts* from which the Novobilskis' claims arise [and] [c]ourts have previously concluded that allegations nearly identical to those pled by the Novobilskis are 'too vague to permit an inference of' a defendant's liability.' " (quoting Del Rosario v. Yakte Properties, LLC, No.

---

collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.").

221CV01304KJMJDP, 2021 WL 4123820, at *2 (E.D. Cal. Sept. 9, 2021) ("Del Rosario alleges Yakte misrepresented the amount of her debt by including unspecified 'interest and fees' that it was 'federally prohibited from collecting' under unspecified laws, and she alleges Yakte 'made other false statements[,]' . . . [t]hese allegations are too vague to permit an inference of Yakte's liability.")); Vargas-Ramos v. Specialized Loan Servicing LLC, No. CV2205443MWFJCX, 2022 WL 18397505, at *4–5 (C.D. Cal. Sept. 21, 2022) ("The Court agrees with Defendants that Plaintiff's claims alleging unfair debt practices must fail.  Plaintiff has failed to identify what 'interest and fees' were supposedly collected (or when) and whether or when any 'recorded notice of default' was ever issued . . . [s]uch allegations do not put Defendants on notice of any specific conduct for which they are being accused."); Haroutoonian v. NewRez LLC, No. SACV2200751CJCJDEX, 2023 WL 2626970, at *3–4 (C.D. Cal. Jan. 10, 2023) ("Plaintiff still fails to allege what kind of communications she received, the general content of those communications, when she received the communications, or which Defendant sent the communication.").

Accordingly, the Court recommends granting the motion to dismiss the eighth and ninth causes of action, but with leave to amend to the extent Plaintiff believes they can sufficiently allege facts to state a cognizable claim.  See Vargas-Ramos, 2022 WL 18397505, at *5 ("While leave to amend will be granted, the Court cautions Plaintiff that threadbare recitations of unfair practices will not suffice.").[7]

## H.    Motion to Dismiss the HOEPA Claim

Defendant moves to dismiss Plaintiff's tenth cause of action for violation of the Home Owners Equity Protection Act ("HOEPA").  (Mot. 22-23.)  Defendant argues the FAC does not demonstrate the loan qualifies for protection under HOEPA because there are no facts stating

---

[7] Defendant did not specifically raise the absence of a specific allegation that Defendant is a debt collector.  See 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."); see Novobilski, 2022 WL 17218504, at *3 ("Plaintiffs must allege: (1) they were consumers (2) who were the object of a collection activity arising from a consumer debt, and (3) the defendant is a 'debt collector,' (4) who engaged in an act or omission prohibited by the FDCPA or Rosenthal Act." (citing Turner v. Cook, 362 F.3d 1219, 1227–28 (9th Cir. 2004))).  The Court notes the FAC does not expressly define Defendant SLS as a debt collector.

1    that the percentage threshold for HOEPA protection was crossed.

2        HOEPA is "an amendment to TILA codified at 15 U.S.C. § 1639 . . . which creates 'a

3    special class of regulated loans that are made at higher interest rates or with excessive costs and

4    fees.' " Lynch v. RKS Mortg. Inc., 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008) (quoting In re

5    Community Bank of Northern Virginia, 418 F.3d 277, 304 (3d Cir. 2005)); Ruiz v. Cent. Mortg.

6    Co., No. CV1408627MMMSSX, 2015 WL 12683873, at *22 (C.D. Cal. Apr. 2, 2015) (same);

7    Kimball v. Flagstar Bank F.S.B., 881 F. Supp. 2d 1209, 1223 (S.D. Cal. 2012) ("HOEPA is not

8    itself an independent regulatory scheme, but rather it is an amendment to TILA.").  HOEPA was

9    "designed to address abusive practices in certain consumer credit transactions, refinances and

10   closed-end home equity loans with high interest rates or high fees, later expanded by Dodd-

11   Frank to include purchase-money mortgages and open-end credit plans (i.e., home equity lines of

12   credit)."  Gustavia Home, LLC v. Rice, No. 16 CIV. 2353 (BMC), 2016 WL 6683473, at *4

13   (E.D.N.Y. Nov. 14, 2016) (citing 15 U.S.C. §§ 1639, 1602(bb)).

14       Defendant proffers that "[a]s a threshold matter, HOEPA applies when a loan's annual

15   percentage rate at consummation exceeds by more than 10 percent the applicable yield on

16   treasury securities, or when the total points and fees payable by the consumer exceed eight

17   percent of the "total loan amount," or $400, whichever is greater.[,] 15 U.S.C. § 1602(aa)(1), (3);

18   12 C.F.R. § 226.32(a)(1)."  (Mot. 22.)

19       The Court notes that Defendant cites to the provisions of the law before they were

20   amended, and not the current version, and thus the manner of the proffer is technically incorrect.[8]

21   _____

22   [8]  The relevant subsection that was previously located at § 1602(aa) is now located at subsection (bb).  See Pub.L.
     111-203, Title X, § 1100 A(1), (2), Title XIV, §§ 1401, 1431, July 21, 2010, 124 Stat. 2107, 2137, 2157; Pallack v.

23   Life is Amazing, LLC, No. 821CV00139JLSKES, 2021 WL 8895281, at *2 (C.D. Cal. July 8, 2021) ("As a
     preliminary matter, the Complaint sufficiently alleges that the loans at issue are 'high-cost mortgages' and that

24   HOEPA's requirements therefore apply here.  A 'high-cost mortgage' under HOEPA is a consumer credit
     transaction secured by the consumer's principal dwelling where the total points and fees for transactions over

25   $20,000 exceed 5% of the total transaction amount." (quoting 15 U.S.C. § 1602(bb)(1)(A)(ii)(I))).  Subsection (aa)
     currently states: "The disclosure of an amount or percentage which is greater than the amount or percentage required

26   to be disclosed under this subchapter does not in itself constitute a violation of this subchapter.  Even if a different
     version applied and any differences pertinent, the claim should be dismissed in the face of no opposition from

27   Plaintiff for failure to allege facts demonstrating HOEPA is applicable to the loan, and because of the limitations
     period.  See Edwards v. McMillen Cap., LLC, 574 F. Supp. 3d 52, 68 (D. Conn. 2021) ("As an initial matter,

28   Edwards alleges no facts in support of the claim that the loan transaction falls under the provisions of HOEPA,
     which only applies to particular consumer credit transactions secured by a consumer's principal residence. 15 U.S.C.
     §§ 1602(bb)(1), 1639.  However, even assuming that HOEPA would apply, the three-year statute of limitations

However, given the loan was consummated in or around 2006, it appears the previous version of the law cited would have been the applicable provision at the time.   The version of the law in effect in 2006 stated as follows:

> **(aa)(1)** A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if--
>
> **(A)** the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> **(B)** the total points and fees payable by the consumer at or before closing will exceed the greater of--
>
> **(i)** 8 percent of the total loan amount; or
>
> **(ii)** $400.

15 U.S.C. § 1602(aa)(1).[9]

Defendant is correct that the complaint is deficient in failing to properly allege the loan was subject to HOEPA, and further, the HOEPA claim is subject to the same limitations period as TILA warranting dismissal as well, and Plaintiff wholly failed to provide any opposition at all to the Defendant's motion to dismiss the HOEPA claim.  As courts have held under the version applicable in 2006, a plaintiff "must allege facts supporting a conclusion that HOEPA applies to the Loan, under the requirements of [15 U.S.C.] § 1602(aa)."  Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1178–79 (E.D. Cal. 2010) (citation omitted); Ruiz, 2015 WL 12683873, at *23 ("These prohibitions, however, requires that the mortgage at issue be covered by § 1602(aa).").  "In order to be subject to the protections afforded by HOEPA, one of two factors has to be established[:] [e]ither the annual percentage rate of the loan at consummation must exceed by more than [8] percent the applicable yield on treasury securities, or the total points and

---

would still bar such a claim because the loan transaction at issue occurred in April 2012."), aff'd, No. 21-1024-CV, 2022 WL 16984534 (2d Cir. Nov. 17, 2022), cert. denied, 143 S. Ct. 2432, 216 L. Ed. 2d 416 (2023).

[9]  Under the previous version of the law, the "term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C.§ 1602(w) (effective to August 13, 2008).

fees payable by the consumer at or before the closing has to be greater than 8 percent of the total loan amount, or $400.00." Brown v. GMAC Mortg., LLC, No. 2:09-CV-03293-GEBKJM, 2010 WL 2102831, at *2 (E.D. Cal. May 24, 2010) (quoting Lynch, 588 F. Supp. 2d at 1260;

Accordingly, the Court finds Plaintiff's complaint should be dismissed on this ground. See id. ("Plaintiff has not alleged facts 'demonstrat[ing] that the mortgage [she] obtained qualified for protection under HOEPA.' "); Hamilton, 746 F. Supp. 2d at 1179 ("The complaint lacks a purported HOEPA claim in absence of allegations that Mr. and Mrs. Hamilton's loan rate or fees exceeded the threshold to invoke HOEPA."); Ruiz, 2015 WL 12683873, at *23 (finding complaint does not demonstrate loan qualified for protection under HOEPA, as it "does not allege ... facts showing that the percentage threshold for HOEPA protection was actually crossed in this case [and] [t]hat failure alone subjects the claim to dismissal." (quoting Lynch, 588 F. Supp. 2d at 1260)); Lynch, 588 F. Supp. 2d at 1260 ("Plaintiffs' Complaint, however, does not allege any particular facts showing that the percentage threshold for HOEPA protection was actually crossed in this case. That failure alone subjects the claim to dismissal."); Rendon, 2009 WL 3126400, at *9 ("The HOEPA claim fails in absence of allegations that Mr. Rendon's loan rate or fees exceeded the threshold in invoke HOEPA. The HOEPA claim's mere allegation of a HOEPA violation is insufficient . . ."); Marks v. Chicoine, No. C 06-06806 SI, 2007 WL 160992, at *8 (N.D. Cal. Jan. 18, 2007) ("Plaintiff must allege facts supporting a conclusion that HOEPA applies to the loan at issue, under the requirements of § 1602(aa). The Court therefore DISMISSES plaintiff's fifth cause of action, with leave to amend.").

Additionally, while Plaintiff opposed the dismissal of the TILA claims relating to the statute of limitations, Plaintiff did not raise any defense at all to the motion to dismiss the HOEPA claim, including the Defendant's argument that the claim is time barred. The Court now turns to consider whether the HOEPA claim is time barred like the TILA claims.

"HOEPA is an amendment of TILA, and therefore is governed by the same remedial scheme and statutes of limitations as TILA." Hamilton, 746 F. Supp. 2d at 1179 (quoting Kemezis v. Matthew, No. CIV.A. 07-5086, 2008 WL 2468377, at *3 (E.D. Pa. June 16, 2008)); Rendon, 2009 WL 3126400, at *9 (same); Kimball, 881 F. Supp. 2d at 1223 (same); Newcomb

1   v. Cambridge Home Loans, Inc., 861 F. Supp. 2d 1153, 1161–62 (D. Haw. 2012) (same).

2   Applying the same analysis and presuming Defendant's argument is applicable due to the

3   same limitations period applying to the HOEPA claim, the Court finds the HOEPA claim should

4   be dismissed for the same reason as the TILA claims under the applicable limitations period, and

5   also without leave to amend given the Plaintiff has proffered no basis why leave to amend should

6   be granted as to equitable tolling.  Rendon, 2009 WL 3126400, at *9 ("The HOEPA claim's

7   futility is further illustrated by the applicable one-year limitations period . . . [as the] damages

8   claim is barred by the one-year limitations of 15 U.S.C. § 1640(e) in that his latest loan closed

9   more than a year before he filed this action."); Hamilton, 746 F. Supp. 2d at 1179 (same);

10  Kimball, 881 F. Supp. 2d at 1223 ("Like Plaintiffs' TILA claim, their allegations under HOEPA

11  are time-barred."); Agraz v. Golden Empire Mortg., Inc., No. CV 16-7088 PA (ASX), 2016 WL

12  10931430, at *4 (C.D. Cal. Dec. 9, 2016) ("Because any amendment to Plaintiff's TILA or

13  HOEPA claims would be futile, the Court dismisses these claims without leave to amend."),

14  aff'd, 707 F. App'x 916 (9th Cir. 2017).

15  If the only deficiency was the absence of pleading facts under HOEPA, the Court would

16  have likely granted leave to amend to plead the applicability of the statute, even despite the lack

17  of any opposition to this motion.  However, in light of the additional deficiency of the limitations

18  period, also unaddressed by Plaintiff specifically as to this cause of action, the Court

19  recommends dismissal without leave to amend.

20  Accordingly, the Court recommends that the Defendant's motion to dismiss the HOEPA

21  claim be granted, and that the tenth cause of action be dismissed without leave to amend.[10]

22  / / /

23  / / /

---

24  [10]  As an additional argument, Defendant proffers that even if the loan falls within the scope of the HOEPA, because

25  HOEPA requires that lenders make certain warnings and disclosures at least three business days before the
    consummation of a HOEPA transaction, 15 U.S.C. § 1639(b)(1), since Defendant did not originate the Loan,

26  Plaintiff cannot allege that Defendant failed to make the required disclosures.  The Court does not find it
    determinative to the motion to address this argument, and further finds it undeveloped similar to above.  If an

27  amended pleading is later challenged, and Defendant wishes to make similar arguments, Defendant is expected to
    more fully support the applicability of such arguments in relation to factors such as, assignment of the loan and

28  liabilities to the new company and the relevant law as to that precise issue and related issues.

**V.**

**RECOMMENDATION**

For all of the above explained reasons, IT IS HEREBY RECOMMENDED that:

1.      Defendant's request for judicial notice be GRANTED as unopposed[11];

2.      Defendant's motion to dismiss the first cause of action for promissory estoppel, be GRANTED with leave to amend under the parameters and legal standards discussed above;

3.      Defendant's motion to dismiss the second cause of action for violation of Business & Professions Code § 17200, be GRANTED with leave to amend under the parameters and legal standards discussed above;

4.      Defendant's motion to dismiss the third cause of action for declaratory relief, be GRANTED without leave to amend;

5.      Defendant's motion to dismiss the fourth cause of action for violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(1), be GRANTED with leave to amend under the parameters and legal standards discussed above;

6.      Defendant's motion to dismiss the fifth cause of action for violation of 12 C.F.R. § 1026.41, the sixth cause of action is for rescission under TILA, and the seventh cause of action is for violation of TILA, 15 U.S.C. § 1601, et seq., be GRANTED without leave to amend;

7.      Defendant's motion to dismiss the eighth cause of action for violation of the FDCPA, and the ninth cause of action for violation of the Rosenthal Act, be GRANTED with leave to amend under the parameters and legal standards discussed above; and

8.      Defendant's motion to dismiss the tenth cause of action for violation of HOEPA, be GRANTED without leave to amend.

These findings and recommendations are submitted to the District Judge assigned to this

---

[11] While unopposed, the Court's findings and recommendations did not depend on taking judicial notice of any documents outside the pleadings.

1  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**
2  **(14) days** of issuance of this recommendation, any party may file written objections to the
3  findings and recommendations with the Court.  Such a document should be captioned
4  "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will
5  review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. §
6  636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may
7  result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)
8  (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).[12]

9
10  IT IS SO ORDERED.

11  Dated:   **December 5, 2023**

UNITED STATES MAGISTRATE JUDGE

---

[12]  Plaintiff shall address Defendant Affinia in objections and whether Plaintiff may attempt to maintain any claims
against Defendant Affinia.